Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COLEGIO MI CUIDO Y EDUCACIÓN, INC., ET ALS<br><br>Apelante<br><br>v.<br><br>RAÚL ANTONIO ORTIZ DÁVILA, ET ALS<br><br>Apelados | TA2025AP00304 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2022CV00094 (208)<br><br>Sobre: Acción Reivindicatoria |
|---|---|---|

Panel integrado por su presidenta, la jueza Grana Martínez[1], la jueza Santiago Calderón y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

# SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

Comparece ante nos el Colegio Mi Cuido y Educación, Inc. ("Colegio" o "Apelante") mediante *Recurso de Apelación* presentado el 2 de septiembre de 2025. Nos solicita la revocación de la *Sentencia Parcial* emitida el 29 de julio de 2025, notificada el 31 de julio del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Humacao ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* una solicitud de sentencia sumaria presentada por el señor Raúl Antonio Ortiz Dávila, la señora Elizabeth Gómez Acevedo y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "matrimonio Ortiz-Gómez" o "Apelados"). En consecuencia, el foro *a quo* desestimó la causa de acción en daños instada por el Apelante por esta estar prescrita.

Por los fundamentos que expondremos a continuación, **confirmamos** el presente recurso.

---

[1] Mediante Orden Administrativa OATA-2024-030 se designó a la Hon. Grace Grana Martínez en sustitución de la Hon. Olga E. Birriel Cardona, ya que está se acogió a los beneficios de retiro.

## I.

Conforme surge del expediente, el 31 de enero de 2022, el Colegio y la señora Irma I. Fontánez,[2] como Presidenta de dicha entidad, instaron *Demanda* sobre acción civil contra los Apelados y Desiderata Realty, LLC ("Desiderata").[3] Además, se incluyó a la Cooperativa de Ahorro y Crédito Las Piedras, como parte con interés.[4] En lo pertinente a la controversia ante nuestra consideración, el Colegio alegó que adquirió de Desiderata una propiedad mediante la Escritura Número Nueve (9), otorgada el 15 de junio de 2020 ante el notario Víctor Martínez Cruz. La aludida finca consta inscrita en el Folio 126, Tomo 54 del Registro de la Propiedad del municipio de Las Piedras.

Asimismo, surge de las alegaciones de la *Demanda,* que la propiedad del matrimonio Ortiz-Gómez consta inscrita al Folio 225 del Tomo 61 del Registro de la Propiedad del municipio de Las Piedras. De igual forma, el Colegio esbozó que su propiedad es la finca principal o matriz, la cual luego fue segregada en lotes, de los cuales uno de ellos constituye la finca adquirida por el matrimonio Ortiz-Gómez.

Del mismo modo, arguyó que una franja de la propiedad antes mencionada constituye el único acceso legal de la finca hacia la vía pública. Adujo que el matrimonio Ortiz-Gómez ha actuado como edificantes de mala fe y en ánimo de usurpar su propiedad. Ante este cuadro, explicó que incoó una acción de interdicto posesorio en el caso HU2020CV00690. No empece lo anterior, expresó que el foro primario determinó que la posesión que el matrimonio Ortiz-Gómez alegaba ostentar sobre la porción de

---

[2] Mediante *Sentencia Parcial* emitida el 18 de mayo de 2023, el foro primario declaró el desistimiento sin perjuicio de la reclamación por parte de la co demandante Irma I. Fontánez. Véase SUMAC TPI, Entrada 86.

[3] Véase SUMAC TPI, Entrada 1.

[4] Mediante *Sentencia* emitida el 19 de octubre de 2022, se desestimaron las causas de acción levantadas contra la Cooperativa de Ahorro y Crédito Las Piedras. Véase SUMAC TPI, Entrada 53.

terreno en controversia, había sido perturbada. Por tal razón, el Colegio instó la demanda que da inicio a este pleito, en la que invocó la protección registral, solicitó la reivindicación de la propiedad y una cantidad no menor de ciento cincuenta mil dólares ($150,000.00) por concepto de los daños ocasionados por haber edificado y construido en terreno ajeno. De otro lado, solicitó que se ordenara la demolición y remoción de toda obra o estructura realizada por estos, incluyendo los portones y verjas. También, solicitó indemnización por daños continuos los cuales estimó en no menos de un millón de dólares ($1,000,000.00).

En cuanto a las alegaciones contra Desiderata, el Colegio le imputó a esta parte el haber violentado la cláusula cuarta de la Escritura de Compraventa suscrita entre ellos, la cual disponía que *"aseguraba tener el suficiente título válido en derecho para vender dicha propiedad sin más cargas, gravámenes y/o limitaciones que las establecidas en la referida escritura".*[5] Por tanto, argumentó que Desiderata incumplió con sus obligaciones como vendedor.

Posteriormente, el 18 de abril de 2022, el Colegio presentó *Demanda Enmendada* a los únicos fines de enmendar el epígrafe para que la Cooperativa de Ahorro y Crédito Las Piedras figurara como parte demandante.[6]

Transcurridos varios trámites procesales, el 21 de abril de 2025, los Apelados presentaron *Mocion* [sic] *Solicitando Sentencia Sumaria Parcial Declarando la Prescripcion* [sic] *a la Causa de Accion* [sic] *de Daños.*[7] En esta, alegaron que, en la demanda enmendada instada por el Colegio, este no adujo cual fue el deber jurídico incumplido por parte del matrimonio Ortiz-Gómez, ni tampoco aludió a la acción repetitiva y continúa ocasionada por

---

[5] Véase, inciso 85 de la *Demanda* en SUMAC TPI, Entrada 1.
[6] Véase SUMAC TPI, Entrada 21.
[7] Véase SUMAC TPI, Entrada 364.

éstos. Cónsono con lo anterior, los Apelados argumentaron que no existían hechos que sostuvieran de forma conclusiva la comisión de daños continuos, toda vez que el presente caso versaba sobre un único evento el cual se dio por virtud de una sentencia dictada en los méritos referente a la posesión del predio en controversia. Agregaron que no cometieron ningún acto u omisión ilegal pues en todo momento actuaron acatando una orden judicial. Adujeron, además, que desde el momento en que se emitió la sentencia interdictal, a saber, el 3 de septiembre de 2020, hasta la fecha de la presentación de la demanda instada en el presente caso, no hubo por parte del Colegio una reclamación extrajudicial o judicial de daños y perjuicio por lo que dicha causa de acción estaba prescrita.

Por su parte, el 8 de mayo de 2025, el Colegio presentó *Réplica a Moción de Sentencia Sumaria.*[8] Por virtud de esta, indicó que la solicitud de sentencia sumaria parcial presentada por los Apelados era improcedente pues la reclamación en daños y perjuicios no se encontraba prescrita, debido a que el matrimonio Ortiz-Gómez continuó ocupando la propiedad del Apelante e impidiéndole el paso por la misma. De igual forma, el Colegio abundó que los daños "son sucesivos mes en mes ante los gastos reales recurrentes que incurre y la perdida [sic] de alquiler sobre una propiedad que actualmente es inutilizable".[9]

Por su parte, el 13 de mayo de 2025, Desiderata presentó *Moción en Torno a "Moción Solicitando Sentencia Sumaria Parcial Declarando la Prescripción a la Causa de Acción de Daños".*[10] Mediante esta, esencialmente adujo que en el presente caso existía controversia en cuanto a que el matrimonio Ortiz-Gómez hubiera estado en posesión ininterrumpida de la porción del terreno en

---

[8] Véase SUMAC TPI, Entrada 390.
[9] Véase SUMAC TPI, Entrada 390, pág. 12.
[10] Véase SUMAC TPI, Entrada 398.

controversia por aproximadamente sesenta (60) años. Por este fundamento, razonó que el Colegio en ningún momento invadió el aludido terreno, dado que es el titular del mismo.

Evaluado estos escritos, el 29 de julio de 2025, notificado el 31 de julio del mismo año, el foro primario emitió *Sentencia Parcial*.[11] Por virtud de esta, el foro *a quo* formuló las siguientes determinaciones de hecho:

1. Los esposo [sic] Dávila - Gómez adquirieron por escritura pública de Compraventa, número Cincuenta y siete (57), otorgada el trece (13) de septiembre de Dos mil once (2011) ante el Notario Ferdinand Vargas Velázquez una propiedad que perteneció a los progenitores del Sr. Raúl Antonio Dávila Ortiz, tomando posesión de toda el área en controversia habiendo adquirido a precio alzado.

2. Muchos años más tarde, el Colegio adquirió, hecho ocurrido el 15 de junio de 2020 y mediante compraventa a precio alzado, la finca que colinda con la parte posterior (NORTE) de la propiedad de los esposos Ortiz – Gómez.

3. Tras los procedimientos correspondientes en el caso HU2020CV00690 y tras una adjudicación en sus méritos de dicha acción interdictal, en virtud de mandato judicial emitido mediante sentencia judicial dictada en el pasado 3 de septiembre de 2020 los esposos Dávila – Gómez recuperaron inmediatamente la posesión del área en controversia.

4. A la luz de dicha determinación judicial dictada en los méritos, fue que los esposos Dávila – Gómez, dentro de los diez (10) días de dictada dicha sentencia, tomaron posesión de toda el área objeto de controversia, cambiaron el candado y reinstalaron la verja en la parte posterior existente, en virtud de una orden judicial contenida en una sentencia debidamente dictada; que luego ratificada por el Tribunal de Apelaciones como correcta.

5. No empecé [sic] a tal conocimiento de los actos de los esposos Dávila – Gómez por parte del Colegio y sus funcionarios; éstos nunca realizaron reclamación extrajudicial contra los esposos Dávila – Gómez en reclamo de daños y perjuicios. Lo anterior señalado quedó admitido bajo juramento por los oficiales del Colegio, específicamente por la Sra. Irma Fontánez.

6. Entre el mes septiembre de 2020 cuando se dictó la sentencia interdictal aludida y el 31 de enero de 2022 nunca hubo reclamación judicial, ni por parte del Colegio ni sus oficiales contra los esposos Dávila – Gómez de daños y perjuicios.

7. La única acción judicial previa a la presentación de la demanda de autos contra los esposos Dávila – Gómez fue una acción civil presentada por el Colegio Mi Cuido y Educación Inc. junto a Irma Fontánez en el caso LP2021CV0028; sin embargo, una detallada lectura de

---

[11] Véase SUMAC TPI, Entrada 440.

esta, en ninguna de sus treinta y cinco (35) alegaciones, ninguno de los demandantes en dicho caso reclamó daños y perjuicios y fue desestimada.[12]

Cónsono con estas determinaciones, el foro *a quo* resolvió que la presente controversia "se trata de un acto único realizado por los esposos Dávila-Gómez, quienes, en ejercicio de su derecho, retomaron de manera inmediata la posesión del área en controversia, tras la acción interdictal favorable dictada a su favor".[13] A tono con lo antes expuesto, el foro primario resolvió que no se configuró un acto de naturaleza continua o progresiva, por lo que no era aplicable la norma que regula los daños continuos a los hechos del presente caso. En esa dirección, determinó que no existía controversia respecto a que el Colegio no realizó ninguna reclamación extrajudicial en relación con los hechos en cuestión, por lo que la causa de acción en daños se encontraba prescrita. En consecuencia, el foro primario declaró *Ha Lugar* la solicitud de sentencia sumaria interpuesta por los Apelados. Como corolario de lo antes expuesto, desestimó con perjuicio la causa de acción en daños instada por el Colegio.

Insatisfecho con el resultado, el 2 de septiembre de 2025, el Apelante presentó el recuso de epígrafe y esgrimió los siguientes señalamientos de error:

> Err[ó] el TPI al concluir que la causa de acción en daños estaba prescrita por haber transcurrido el año desde que se dictó la sentencia de interdicto y la radicación de la presente demanda.
>
> Err[ó] el TPI al concluir que una sentencia obtenida bajo fraude al tribunal le aplica el término prescriptivo beneficiando exclusivamente a los Esposos en claro perjuicio del Colegio.
>
> Err[ó] el TPI al haber concluido el acto único según doctrina a raíz de la legitimación y validez de la sentencia de interdicto posesorio, cuando existe gran cantidad de evidencia impugnando la misma por haberse obtenido bajo perjurio de la parte apelada Raúl Ortiz Dávila.

---

[12] Véase SUMAC TPI, Entrada 440, pág. 2-3.
[13] Véase SUMAC TPI, Entrada 440, pág. 6.

Err[ó] el TPI al concluir que la determinación judicial validaba o legitimaba la ocupación y posesión de los Esposos Ortiz-Gómez del terreno en disputa por acto ilegal o doloso alguno al TPI; siendo dicho acto uno completamente legal.

El 8 de septiembre de 2025, esta Curia emitió *Resolución* mediante la cual se le concedió a los Apelados hasta el 2 de octubre de 2025 para que presentaran su postura. No obstante, el 30 de septiembre de 2025, los Apelados presentaron *Moción Solicitando Breve Termino[sic] Adicional para Presentar Alegato*, en la que solicitaron una prórroga de tres (3) días laborables para presentar su alegato. Evaluado el aludido escrito el 2 de octubre de 2025, esta Curia emitió *Resolución* mediante la cual concedió la prórroga solicitada. Oportunamente, el 7 de octubre de 2025, los Apelados presentaron *Alegato de la parte Apelada*. Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera

preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas*, *supra,* pág. 118. "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor".

*Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit. v. Rocca Dev. Corp., et als.,* supra*,* 215 DPR___ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

### B. Prescripción extintiva

La prescripción de las acciones es un asunto de derecho sustantivo y no procesal. *Landrau Cabezudo et al. v. Puertos et al.,* 215 DPR___ (2025) 2025 TSPR 7, pág. 14. Esta figura jurídica persigue *"*evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos.*" García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008). Por ello, nuestro

ordenamiento "parte de la premisa de que las reclamaciones válidas deben ejercerse oportunamente". *OAM v. Abarca Health,* 215 DPR___ (2025) 2025 TSPR 23 pág. 17.

A esos fines, el Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9481, establece que "[l]a prescripción es una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo". A su vez, el aludido artículo añade que "[l]as acciones prescriben por el mero lapso del tiempo fijado por ley". *Íd.* Por otro lado, en las causas de acción por daños, "los términos prescriptivos comienzan a transcurrir desde que el agraviado tuvo o debió tener conocimiento del daño y estuvo en posición de ejercer su causa de acción". *Landrau Cabezudo et al. v. Puertos et al.,* supra.

Cabe aclarar, que cuando un perjudicado tenga una causa de acción en daños contra varios demandados, "deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido [...] si interesa conservar su causa de acción contra cada uno de ellos. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 389 (2012); Véase además, *Maldonado Rivera v. Suárez y otros,* 195 DPR 182, 210 (2016). Por ende, "en las obligaciones solidarias que provengan de coacusación del daño, cuando el acreedor reclama de uno de los deudores solo la parte que le corresponde, no se interrumpe por ello la prescripción respecto a los otros codeudores". Artículo 1189 del Código Civil de 2020, 31 LPRA sec. 9054.

En armonía con lo anterior, nuestro ordenamiento jurídico reconoce que, a diferencia de la caducidad, la prescripción sí permite interrupción. Existen tres (3) maneras de interrumpir la prescripción, a saber: (1) la presentación de la acción judicial correspondiente, (2) por una reclamación extrajudicial hecha por el acreedor, dirigida al deudor, o (3) el reconocimiento de

la obligación por parte del deudor. Producida la interrupción, comienza nuevamente a transcurrir el cómputo del plazo. Art. 1197 del Código Civil de 2020, 31 LPRA sec. 9489. Véase, además, *Ross Valedón v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 495 (2024). En ausencia de un acto interruptor, el titular de una causa de acción pierde su derecho a instalarla si no la ejerce en el plazo que establece la Ley. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1067 (2020).

Por otra parte, en virtud la normativa antes expuesta, nuestro Tribunal Supremo ha reiterado la finalidad jurídica de esta figura, estableciendo lo siguiente:

> Al fijar un plazo determinado en el cual se deberá instar una acción, se pone punto final a las situaciones de incertidumbre jurídica y se evita que las personas estén sujetas de forma indefinida a la contingencia de una reclamación. De lo contrario, un demandado podría encontrarse en una situación de indefensión como consecuencia del paso del tiempo y la desaparición de la prueba. *Íd.,* pág. 1068.

De tal manera, se promueve que las personas ejerzan sus causas de acción con diligencia, lo que fomenta la estabilidad en las relaciones y el tráfico jurídico. *SLG Haedo-López v. SLG Roldán Rodríguez,* 203 DPR 324, 337 (2019).

Ahora bien, en *Birriel Colón v. Econo y otro, supra,* pág. 101 (2023), el Tribunal Supremo mencionó algunos factores que se pueden tomar en consideración para determinar si una reclamación frente a quien corresponda, pudiera surtir efectos en cuanto a otras personas a las que no fue expresamente dirigida son: (1) la suficiencia del esfuerzo que el interruptor debe realizar para determinar el sujeto pasivo de su pretensión y (2) si el acto de interrupción hubiera llegado o podido llegar normalmente a ser conocido por los afectados. Asimismo, en Puerto Rico se ha reafirmado el principio general de que "la buena fe proscribe la utilización de la defensa de prescripción." *Íd.,* pág. 102.

En sintonía con lo anterior, el Tribunal Supremo de Puerto Rico ha reconocido "para que una reclamación extrajudicial sea efectiva debe cumplir con lo siguiente: (1) que sea oportuna; (2) que una persona con legitimación la presente; (3) que el medio utilizado para hacer la reclamación sea idóneo, y (4) que exista identidad entre el derecho reclamado y el afectado por la prescripción". *Íd.*, pág. 96–97.

### C. Daños Sucesivos y Daños Continuados

Nuestra jurisprudencia ha reconocido varios tipos de daños, entre los que se encuentran los daños sucesivos y los daños continuados. *Santiago v. Ríos Alonso,* 156 DPR 181, 190 (2002). No obstante, "[d]istinguir los daños continuados de los daños sucesivos es necesario para lograr resultados justos afines con la política pública y los principios jurídicos."*Cacho González et al. v. Santarrosa et al.,* 203 DPR 215, 222 (2019). En ese sentido, "los daños continuados configuran una sola causa de acción que incluye todas las consecuencias lesivas ocasionadas por los actos culposos o negligentes". *Íd.* Puesto que los daños son interrumpidos y unidos entre sí, se pueden prever su continuidad cuando estos se conocen. *Íd.* Así pues, no es hasta la producción del resultado definitivo o cuando se verifica los últimos actos u omisiones que comienza a correr el término prescriptivo para reclamar por estos daños. *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 667 (2017).

Por otro lado, "los daños sucesivos constituyen una secuencia de daños individuales y concretos que se producen en intervalos finitos de tiempo". *Cacho González et al. v. Santarrosa et al., supra.* Cónsono con anterior, en este tipo de daño "cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez genera una causa de acción independiente". *Íd.* Es decir, "[s]on daños ciertos que se van

repitiendo, sin que necesariamente sean idénticos, y no son previsibles o susceptibles de ser descubiertos empleando una diligencia razonable". *Íd.* pág. 222-223.

De igual forma, referente a la distinción entre daños continuados y daños sucesivos, en *Rivera Ruiz et al. v. Mun. de Ponce et al,* 196 DPR 410, 417 (2016) el Tribunal Supremo aclaró que:

> Como vemos, la diferencia entre ambos tipos de daños es que, en los sucesivos, cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez genera una causa de acción independiente, mientras que en los continuados se genera una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los *previsibles* en el futuro, como consecuencia de una conducta torticera continua. Esa diferencia implica que en estos dos escenarios, el término prescriptivo para presentar una reclamación de indemnización comienza a transcurrir en momentos distintos.

Finalmente, nuestro más Alto Foro ha expresado que, aunque tradicionalmente nos referimos a estas doctrinas como *daños continuos* o *daños sucesivos,* "lo que en realidad es continuo o sucesivo en estos escenarios es el acto u omisión que produce el daño y no necesariamente la lesión sufrida". *Íd.* De esta forma, esta doctrina "no descansa en la naturaleza [...] del perjuicio ocasionado por la perturbación, y sí en el carácter continuo o progresivo de *la causa* [acto u omisión torticera] que lo origina, que renueva constantemente la acción dañosa". *Íd.* págs. 417-418.

### III.

En el caso que nos ocupa, el Colegio nos solicita que revoquemos la ***Sentencia Parcial*** dictada por el foro primario el 29 de julio de 2025, notificada al día siguiente, mediante la cual desestimó la causa de acción sobre daños y perjuicios instada por el Apelante. A esos efectos, esboza, como primer señalamiento de error, que el foro *a quo* incidió al determinar que la causa de acción en daños se encontraba prescrita por haber transcurrido más de un año entre la sentencia de interdicto posesorio y la

presentación de la demanda que inició este pleito. Como segundo error, argumenta que incidió el foro primario al concluir que una sentencia emitida mediando fraude al tribunal le aplica el término prescriptivo en cuestión, lo cual benefició únicamente a los Apelados. Asimismo, el Apelante sostiene, como tercer error, que el foro primario concluyó que en el presente caso se llevó a cabo un acto único a raíz de la sentencia de interdicto posesorio, la cual subrayó que se emitió tomándose en consideración declaraciones emitidas bajo perjurio. Por último, como cuarto señalamiento de error, esgrime que el foro primario erró al disponer que la aludida determinación judicial interdictal validó la posesión del matrimonio Ortiz-Gómez sobre el terreno en disputa. Veamos.

De entrada, es menester destacar que, dado a que el recurso de epígrafe versa sobre la revisión de un dictamen resuelto por la vía sumaria, le corresponde a este foro revisor realizar un examen *de novo*, tanto de la solicitud de sentencia sumaria presentada y sus anejos, así como de la oposición instada. Efectuado un análisis detallado, resolvemos que todas las partes cumplieron esencialmente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra*.

Atendido lo anterior, nos corresponde determinar si existen hechos materiales en controversia que impidan la resolución sumaria de la controversia ante nos. En esencia, de así determinarlo, se expondrán los hechos controvertidos y los que no se encuentran en controversia. Tras realizar un estudio minucioso del expediente del caso, el cual incluye los documentos anejados a la solicitud de sentencia sumaria, así como el escrito en oposición, **colegimos que no existen hechos materiales en controversia en la Sentencia Parcial dictada.** Con lo anterior expuesto, **adoptamos las determinaciones de hechos formuladas por el foro primario como hechos materiales incontrovertidos**.

Ante este cuadro, corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia que nos ocupa. De esta manera, procedemos a evaluar si procedía desestimar la causa de acción en daños y perjuicios incoada por el Apelante, por esta estar prescrita. Conforme se desprende del expediente ante nuestra consideración, el Apelante esbozó en la *Demanda Enmendada* las siguientes alegaciones:

> 35. Ante ello, los demandados, Esposos Ortiz-Gómez, y en ánimos de usurpar la propiedad privada de los demandantes [Colegio] instaron una acción de interdicto posesorio bajo el número HU2020CV00690 Raúl Antonio Dávila y otros vs. Colegio Mi Cuido y Educación. En este caso alegaron falsamente que se les había perturbado en su posesión ininterrumpida por aproximadamente sesenta (60) años de dicha porción de terreno. En sus alegaciones, los demandados, reclamaron la posesión previa de sus causantes, desde el año 1962.
>
> 36. El Tribunal en el caso HU2020CV00690 entendió que la posesión había sido perturbada emitiendo resolución a esos efectos a favor de los aquí demandados, para que no fueran molestados en la posesión como cuestión de hecho.[14]

Nótese que conforme alega el Colegio, **la posesión** del terreno en controversia por parte de los Apelados, responde a una determinación emitida por el foro primario en el caso HU2020CV00690. En armonía con lo anterior, es **un hecho incontrovertido** que el 3 de septiembre de 2020 el foro primario dictó *Sentencia* ("*Sentencia Interdictal*") en el alfanumérico HU2020CV00690. En concreto, dicho dictamen dispuso lo siguiente:

> A tenor con las determinaciones de hechos y las conclusiones de derecho precedentemente expuestas, se declara CON LUGAR **la petición de injunction posesorio. Se ordena al demandado [Colegio] que reestablezca al demandante [matrimonio Ortiz-Gómez] en su posesión**, para lo cual deberá proceder a la eliminación de las barreras que impiden el uso del portón. El demandado deberá darle acceso a la parte demandante tal y como existía previo a haber obstaculizado la entrada al portón en controversia. Tendrá 10 días a partir de la notificación de esta Sentencia, para remover todas las barreras que impiden el uso del portón. De incumplir con lo aquí ordenado, podrá ser encontrado en desacato (Énfasis nuestro).[15]

---

[14] Véase SUMAC TPI, Entrada 21, Anejo intitulado *Demanda Enmendada*, pág. 6.

[15] Véase SUMAC TPI en el caso HU2020CV00690. Entrada 32, pág. 7.

Vale destacar que el Colegio apeló la *Sentencia Interdictal* el 21 de octubre de 2020, pero su recurso fue desestimado por un panel hermano mediante *Sentencia* emitida el 22 de enero de 2021 en el alfanumérico KLAN202000853.[16] En esta misma línea, el 16 de abril de 2021, este Tribunal de Apelaciones remitió el mandato al foro primario adviniendo así final y firme la determinación de esta Curia, lo cual a su vez provocó que la Sentencia Interdictal, de igual manera adviniera final y firme.[17] Véase *Colón y Otros v. Frito Lays*, 186 DPR 135, 153 (2012).

Ahora bien, el Colegio sostiene, en su primer señalamiento de error, que el foro primario incidió en desestimar su causa de acción sobre daños y perjuicios por el fundamento de prescripción. Dicha causa de acción surge a raíz de **la posesión** del matrimonio Ortiz-Gómez del predio en controversia, en cumplimiento con lo resuelto en la *Sentencia Interdictal*. A esos fines, no existe controversia en torno a que dicha determinación fue cumplida por los Apelados dentro de los diez (10) días de haberse emitido la misma. Es decir, el alegado acto que da origen a la causa de acción en daños instada por el Apelante se materializó en el mes de septiembre de 2020. El hecho de que la *Sentencia Interdictal* fuera apelada no interrumpió el término para presentar la acción en daños. Ello es así, pues, dicha apelación no se puede considerar como una reclamación judicial o extrajudicial que interrumpa el término prescriptivo puesto **que no identifica el alegado daño ocasionado**. Lo mismo ocurre con la presentación de la *Demanda* incoada por el Colegio contra el matrimonio Ortiz-Gómez, el 16 de febrero de 2021, en el caso LP2021CV00028, la cual se radicó "para dilucidar la titularidad de la franja del acceso hacia la propiedad y reivindicar la misma de la posesión de los

---

[16] Véase *Sentencia* emitida el 22 de enero de 2021 en el caso KLAN202000853.
[17] Véase SUMAC TPI en el caso HU2020CV00690. Entrada 49.

demandados; de igual forma, para dilucidar si existe o no usucapión".[18] En este escenario, tampoco se realizó alegación en cuanto a los daños y perjuicios ocasionados por los Apelados.

A tono con lo anterior, en el presente caso existen admisiones por parte del Colegio en cuanto a que esta entidad **no realizó ninguna reclamación judicial o extrajudicial previo a la presentación de la *Demanda* que motiva este pleito**. Prueba de ello es la contestación del Colegio a un pliego de interrogatorio elaborado por los Apelados. Concretamente en el interrogatorio número 14, el matrimonio Ortiz-Gómez expuso:

> 14. Sírvase expresar si el "Colegio" por conducto de cualquier oficial o algún personal contratado o personal relacionado o por cualquier perito o tercero **remitió alguna vez alguna carta y/o comunicaciones y/o notificación de cualquier índole y/o para cualquier propósito**, luego del día 8 de noviembre de 2008 y antes de radicada la demanda de autos a Raúl Antonio Ortiz Dávila y/o Elizabeth Gómez Acevedo. De no haber notificado ninguna exprésalo así bajo juramento (Énfasis nuestro).[19]

Ante esto, el Colegio contestó lo siguiente:

> 14. **El Colegio, ni ninguno de sus funcionarios, directores, oficiales, accionistas empleados o contratistas han realizado notificación de ninguna índole previo a la fecha indicada hasta donde se tiene conocimiento.** Aunque la pregunta es amplia y ambigua, sujeta a malinterpretación, ya que no relaciona o especifica el propósito o por la cual razón o motivo al cual se puede referir en atención a la notificación. Si fuera más específico se le podrá dar una contestación más concreta. **Pero hasta donde se tiene conocimiento no.** De obtenerse carta, documento o notificación se le notificara en la obligación continua de descubrimiento de prueba. Toda la prueba que se cuenta hasta el momento ha sido entregada y circulada entre las partes. **La presente declaración al igual que todas las contestaciones en el presente documento son bajo el más solmene juramento** (Énfasis nuestro).[20]

Por otro lado, conviene señalar que, el Apelante sostiene que, en el caso de marras, opera la doctrina de daños continuados. Conforme dicha doctrina, los daños continuados configuran:

> [A]qu[e]llos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que

---

[18] Véase SUMAC TPI, en el caso LP2021CV00028, Entrada 1.
[19] Véase SUMAC TPI, en el caso HU2022CV00094, Entrada 364, Anejo intitulado *Interrogatorio y Requerimiento Documentos*, pág. 6.
[20] Véase SUMAC TPI, en el caso HU2022CV00094, Entrada 364, Anejo intitulado *Contestación a Interrogatorio y Requerimiento*, pág. 2. Dicha contestación fue jurada y suscrita por la señora Irma Iris Fontánez, el 20 de marzo de 2024.

resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca — por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto (citas omitidas).*Rivera Ruiz et al. v. Mun. de Ponce et al, supra*, pág. 417.

En armonía con lo antes expuesto, cuando opera esta doctrina, el término prescriptivo comienza a operar "cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior". *Íd.,* pág. 426.

Cónsono con la normativa previamente esbozada, es preciso resaltar que "**lo que en realidad es continuo o sucesivo en estos escenarios es el acto u omisión que produce el daño y no necesariamente la lesión sufrida**" (Énfasis nuestro). *Íd.*, pág. 417. Es decir, esta doctrina "no descansa en la naturaleza [...] del perjuicio ocasionado por la perturbación, y **sí en el carácter continuo o progresivo de** *la causa* **[acto u omisión torticera]** que lo origina, que renueva constantemente la acción dañosa" (Énfasis nuestro). *Íd.*, pág. 417-418. Es decir, a la hora de evaluar si estamos ante un caso de daños continuados, es necesario examinar **si la causa de los daños es de carácter continuo**. Apoyados en esta premisa, somos del criterio de que, en el caso de epígrafe, el acto presuntamente negligente **fue uno solo:** la posesión por parte de los Apelados del predio en controversia. No estamos ante una causa u omisión torticera de carácter continuo o progresivo, sino **ante un acto concreto**.

Asimismo, tampoco cabe hablar de daños sucesivos pues no estamos ante "una secuencia de daños individuales y concretos que se producen en intervalos finitos de tiempo". *Cacho González et al. v. Santarrosa et al., supra,* pág. 222. Por tanto, a la luz de lo antes expuesto, colegimos que en la presente controversia no opera ni la doctrina de daños sucesivos ni la de daños continuados.

Resuelto lo anterior, corresponde retomar el asunto de la prescripción. En este caso, el término prescriptivo comenzó a transcurrir a partir del momento en que los Apelados tomaron posesión del predio en controversia. Conforme a los hechos probados, los Apelados tomaron control de la propiedad dentro de los diez (10) días de emitida la *Sentencia Interdictal* la cual se emitió el 3 de septiembre de 2020, es decir, en algún momento entre el 4 al 13 de septiembre de 2020. Para propósitos del cómputo, tomaremos como fecha de la posesión del predio el décimo día, entiéndase, el **13 de septiembre de 2020**. De esta forma, el Apelante tenía hasta el **13 de septiembre de 2021** para instar su causa de acción en daños pues, conforme hemos discutido, en el presente caso no se presentó ninguna reclamación judicial o extrajudicial que interrumpiera el término prescriptivo y tampoco opera la doctrina de daños continuados o sucesivos. Toda vez que la *Demanda* se presentó el 31 de enero de 2022, es forzoso concluir que la acción en daños se **presentó tardíamente** ya que esta se encontraba prescrita al momento de su radicación. En vista de lo anterior, el primer error esbozado por el Colegio no se cometió.

Atendido lo anterior, corresponde resolver el segundo, tercer y cuarto señalamiento de error expuesto por el Apelante, los cuales se discutirán de manera conjunta por estar íntimamente relacionados entre sí. En concreto, el Colegio cuestiona mediante estos errores la validez de la *Sentencia Interdictal*. Es menester aclarar que la determinación del foro primario en la *Sentencia Interdictal* fue conceder el interdicto posesorio solicitado por el matrimonio Ortiz-Gómez. En ese sentido, lo que se le confirió a los Apelados **fue la posesión** del predio en controversia más **no la titularidad,** la cual continúa en disputa ya que es uno de los reclamos del Apelante que está pendiente de adjudicación. No obstante lo anterior, según discutido, la *Sentencia Interdictal* es una determinación que advino **final y firme** y como tal, le cobija una

**presunción de corrección y validez**.  Véase, *Nieves Díaz v. González Massas,* 178 DR 820, 840 (2010). En vista de que, en el caso de marras, dicha presunción no fue rebatida, es forzoso concluir que los señalamientos de error segundo, tercero y cuarto no se cometieron.

**IV.**

Por los fundamentos expuestos anteriormente, **confirmamos** la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones